**WEISBERG LAW**
Matthew B. Weisberg, Esq.
Attorney ID No.: 85570
L. Anthony DiJiacomo, III, Esq.
Attorney ID No.: 321356
7 South Morton Ave.
Morton, PA 19070
(610) 690-0801
(610) 690-0880 – Fax

**SCHAFKOPF LAW, LLC**
Gary Schafkopf, Esq.
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREA PESACOV**<br>313 Arch St., Unit 209<br>Philadelphia, PA 19130 | : <br> : <br> : <br> : | |
| Plaintiff, | : | |
| v. | : | No.: 18-cv-4282 |
| | : | |
| **CUSHMAN & WAKEFIELD OF**<br>**PENNSYLVANIA, INC.**<br>One Liberty Place<br>1650 Market Street, 33rd Floor<br>Philadelphia, PA 19103 | : <br> : <br> : <br> : <br> : | **JURY TRIAL OF TWELVE (12)**<br>**JURORS DEMANDED** |
| Defendant. | : | |

### THIRD AMENDED COMPLAINT[1]

**I.   JURISDICTION & VENUE**

1.   Jurisdiction in this Honorable Court is based on a violation of the United States

Constitution, Amendment I, and federal law actionable through 42 U.S.C. §1983, et seq., as

conferred by 28 U.S.C. § 1331.

---

[1]   This action was initiated in Philadelphia Court of Common Pleas in December 2017 by way of Writ of Summons. After extensive pleadings, Plaintiff filed her Second Amended Complaint on September 13, 2018, which Defendants removed to this Honorable Court. Plaintiff's Undersigned Counsel, out of an abundance of caution, notes that, pursuant to Rule 15, this Complaint is the first time Plaintiff has amended her Complaint since this matter was removed to this Honorable Court.

2.      Venue is proper in the in this District as occurrences that give rise to the cause of action took place within this District.

**II.      PARTIES**

3.      Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

4.      Plaintiff, Andrea Pesacov, is an adult individual, residing at the above captioned address. At all times material hereto, Pesacov, was employed by Defendant as the Senior Director of Cushman & Wakefield's Retail Services for the Philadelphia / N.E. Region. Plaintiff, Pesacov worked for Defendant for about 3.5 years, from approximately April 2014 until approximately September 2017.

5.      Defendant, Cushman & Wakefield of Pennsylvania, Inc. ("C&W") is a commercial real estate services company with its primary place of business at the above-captioned address. Upon information and belief, C&W is a corporate child of Non-Party, Cushman & Wakefield, Inc., which is one of the largest commercial real estate services firms in the world, operating in over seventy countries and employing approximately 45,000 employees.

**III.      OPERATIVE FACTS**

6.      Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

7.      Plaintiff was employed by Defendant in or around April 2014 until September 18, 2017, when Defendant wrongfully terminated her employment.

8.      In or around April 2014, Defendant's Agent, Non-Party, John Derham, who was employed by Defendant as the Senior Managing Director, met with Plaintiff concerning prospective employment.

9.      During this initial job interview, Derham made inappropriate, sexual advances on Plaintiff. In fact, Derham inappropriately placed on hand on Plaintiff's thigh three (3) times.

10.     On the third occasion, Plaintiff gave Derham a nasty look, in which Derham responded, stating that he was a "very tactile individual". Plaintiff replied, "not with me you're not."

11.     Despite this sexually charged interview, Defendant ultimately hired Plaintiff in or around April 2014.

12.     Plaintiff entered into an employment contract with Defendant in or around April 2014. Plaintiff does not possess a copy of the employment contract. Upon information and belief, Defendant possesses a true and accurate copy of the employment contract.

13.     Pursuant to the employment contract, if Plaintiff separated from Defendant, Defendant was contractually required to pay Plaintiff her earned commission or "brokerage splits" from all pending contracts that Plaintiff was responsible for prior to any separation.

14.     Plaintiff reported Derham's inappropriate sexual harassment of Plaintiff during the aforementioned job interview to Defendant's Agent, Non-Party, Matt Winn, was was employed by Defendant as the Chief Operations Officer of the Americas.

15.     Winn informed Plaintiff that Derham had a reputation of sexually harassing his female colleagues and subordinates and that Winn expected Plaintiff to have a difficult working relationship with Derham.

16.     Upon information and belief, Winn did not take any further actions concerning Derham's inappropriate sexual harassment of Plaintiff.

17.     Upon information and belief, Derham created a hostile work environment due to Plaintiff's sex and Plaintiff's refusal to Derham's sexual advances.

18.     During the first six months of Plaintiff's employment, Derham regularly lied and mislead Plaintiff concerning her workplace duties. For example, Derham mislead Plaintiff concerning potential contracts with Shops at Liberty Place, causing Plaintiff to lose significant commissions.

19.     Derham also spread lies concerning Plaintiff to Plaintiff's fellow co-workers and

subordinates. Derham's close, personal friend, Defendant's Agent, Non-Party, Shannon Mellor,

who was employed by Defendant in the position of Operations Manager of the Philadelphia

Office also began spreading lies concerning Plaintiff at Derham's direction.

20.     Derham and Mellor also encouraged Plaintiff's support staff to falsely claim that they

could not get along with Plaintiff in an attempt to create pre-text for Plaintiff's termination

and/or demotion.

21.     In December 2015, as Plaintiff was leaving Defendant's 2015 holiday party, Derham,

approached her, and sexually propositioned her by saying, "What would you do right now if I got

down on my hands and knees and ate you out?"

22.     Plaintiff reported Derham's sexual harassment at the holiday party, as well as the ongoing

sex-based discrimination and hostile work environment to Defendant's Agent, Non-Party, Gene

Spiegelman who is employed by Defendant in the position of Vice Chairman-Head of Retail

Services.

23.     As a result of Plaintiff's aforementioned internal complaint, Defendant initiated an

investigation into Derham concerning the aforementioned acts of sexual harassment, as well as

the ongoing sex-based discrimination and hostile work environment caused by Derham.

24.     Nonetheless, Derham continued to be employed by Defendant into in or around April

2017.

25.     Even after Plaintiff's aforementioned internal complaint, Derham continued to

discriminate against Plaintiff and subject Plaintiff to a hostile work environment.

26.     For example, after convincing a support staff member to falsely accuse Plaintiff of being

mean to her, Derham called Plaintiff into his office and screamed at Plaintiff so loudly that the

entire office could hear. Upon information and belief, Derham did so in order to discredit Plaintiff and protect himself.

27.     Derham and Mellor continued to spread lies concerning Plaintiff and created false pretenses to discipline Plaintiff.

28.     In or around March 2017, Defendant terminated Derham. However, as the results of the internal investigation were never shared with Plaintiff, Plaintiff is unaware of the rationale or cause for Derham's termination.

29.     Nonetheless, Plaintiff believes that Defendant's Agents harbored animosity towards Plaintiff as a result of Plaintiff's aforementioned internal complaint against Derham, which is believed to have played a part in Derham's termination.

30.     In or around March 2017, Defendant hired Defendant's Agent, Non-Party Mike McCurdy to be the Regional Managing Principal at the Philadelphia office.

31.     In or around May 20, 2017, Plaintiff suffered a medical emergency due to food-poisoning while at a work-related function, resulting in multiple surgeries.

32.     Plaintiff's medical doctors did not allow Plaintiff to return to work until on or about September 18, 2017.

33.     While in the intensive care unit, on or about May 20, 2018, Plaintiff contacted McCurdy towards an approved medical leave, which was informally granted.

34.     Plaintiff underwent three significant stomach surgeries during Summer 2017.

35.     While on an approved medical leave of absence, Plaintiff visited her workplace solely in order to meet with her assistant on August 17, 2017 – as her doctor only approved her for a one-hour visit.

36.     However, while at her workplace on August 17, 2017, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra demanded to meet with Plaintiff – prior to Plaintiff's return from her approved medical leave of absence.

37.     At all material times on August 17, 2017, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra knew that Plaintiff was on an approved medical leave of absence and was not returning from her approved medical leave of absence until in or around September 18, 2017.

38.     At all material times on August 17, 2017, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra knew that Plaintiff was on an approved medical leave of absence and was only allowed to return to work, per for doctor's instruction, for one hour.

39.     Nonetheless, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra interrogated Plaintiff and falsely accused Plaintiff of violating various company policies based on reports from Derham – reports made prior to Derham's termination.

40.     The interrogation lasted approximately two hours.

41.     During the interrogation, Defendant's Agent, Non-Party, Mike McCurdy communicated to Plaintiff that it was time for Plaintiff to look for another job.

42.     Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra interfered with Plaintiff's approved medical leave of absence in violation of the Family Medical Leave Act.

43.     During the aforementioned interrogation, Sierra admitted that she had never previously asked Plaintiff her side of any of the alleged (and false) allegations, but instead has simply believed Derham.

44.     In fact, Sierra admitted – as she was a recent hire – that she was not aware of the harrowing 2.5-year history of Derham's subjection of Plaintiff to sexual harassment, sex-based discrimination, and hostile work environment.

45.     Nonetheless, at the end of the meeting, McCurdy told Plaintiff that it was time for her to look for another job.

46.     On September 18, 2017, which was Plaintiff's first day back at work following her medical leave of absence, Plaintiff was called into the office by McCurdy and terminated. Plaintiff was not given any reason for her termination.

47.     Plaintiff believes and therefore avers that Plaintiff was wrongfully terminated in retaliation for Plaintiff's aforementioned internal complaint combined with her medical leave of absence.

48.     Since Plaintiff's termination, Plaintiff has received some commissions on pending contracts.

49.     However, Plaintiff believes and therefore avers that Defendant has breached the employment contract by failing to pay Plaintiff all commissions owed to Plaintiff pursuant to the employment contract. To determine the full extent of Plaintiff's financial damages, an accounting of the commissions earned by Plaintiff on the pending contracts is required.

IV.     **COUNTS OF ACTION**

**COUNT I**
*Violations of Title VII - Retaliation*

50.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

51.     On or about July 6, 2018, Plaintiff timely cross-filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.

52.     In Plaintiff's Charge of Discrimination, Plaintiff complained of sexual harassment, a

hostile work environment, discrimination based on Plaintiff's sex (female), retaliation, wrongful

discharge, and discrimination based on Plaintiff's disability. *See* Exhibit A.

53.     Although Plaintiff's Charge of Discrimination was cross-filed with both the PHRC and

the EEOC, upon information and belief, the PHRC deferred Plaintiff's charge to the EEOC for

investigation.

54.     On or about July 19, 2018, Plaintiff received a Notice of Right to Sue letter from the

EEOC, thereby exhausting Plaintiff's administrative remedies under Title VII. *See* Exhibit B.

55.     Defendant meets the definition of "employer" under Title VII.

56.     Plaintiff meets the definition of an "employee" under Title VII.

57.     Plaintiff made an internal report of sexual harassment, sexual discrimination, and a

hostile work environment to her employer, Defendant, in or around January 2016 concerning the

ongoing conduct of Non-Party, Derham.

58.     Plaintiff's aforementioned internal report concerning the sexual harassment, sexual

discrimination, and a hostile work environment caused by Non-Party, Derham constitutes an

"protected activity" under Title VII.

59.     Although Defendant allegedly investigated the ongoing conduct of Non-Party, Derham,

Defendant did not terminate Non-Party, Derham until in or around April 2017 – well over a year

after Plaintiff's internal report.

60.     During the intervening time, Non-Party, Derham continued to subject Plaintiff to sexual

harassment and a hostile work environment based on Plaintiff's sex (female) and Plaintiff's prior

refusals to Non-Party, Derham's sexual advances.

61.     On or about May 20, 2017, Plaintiff qualified for and took a medical leave of absence in order to undergo a significant stomach surgery on May 20, 2017.

62.     While on the approved medical leave of absence, on or about August 17, 2017, Defendant's Agent, Non-Party, Mike McCurdy communicated to Plaintiff that it was time for Plaintiff to look for another job.

63.     Plaintiff completed her medical leave of absence and returned to work for Defendant on September 18, 2017.

64.     Plaintiff suffered an adverse employment decision when Defendant terminated Plaintiff on September 18, 2017, the very day Plaintiff returned from her medical leave of absence.

65.     Plaintiff believes and therefore avers that Defendant was significantly motivated to terminate Plaintiff due to her aforementioned internal report of sexual harassment, sexual discrimination, and a hostile work environment.

66.     Plaintiff believes and therefore avers that Defendant, by and through its various agents, harbored animosity towards Plaintiff for her internal report in which Defendant's agents believed caused the termination of Non-Party, Derham.

67.     The temporal proximity between the protected activity, ultimately resulting in Non-Party, Derham's termination in or around April 2017 and the adverse action, which occurred on September 18, 2017 are unduly suggestive – as the period during which Plaintiff was on an approved medical absence should be ignored when considering the temporal proximity, i.e. May 20, 2017 through September 18, 2017.

68.     Plaintiff suffered financial harm as well as emotional harm as a result of Defendant's wrongful termination of Plaintiff in retaliation for her aforementioned internal report.

69.     Defendant retaliated against Plaintiff in violation of Title VII.

## COUNT II
### *Violations of Pennsylvania Human Relations Act ("PHRA") - Retaliation*

70.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

71.     On or about July 6, 2018, Plaintiff timely cross-filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.

72.     In Plaintiff's Charge of Discrimination, Plaintiff complained of sexual harassment, a hostile work environment, discrimination based on Plaintiff's sex (female), retaliation, wrongful discharge, and discrimination based on Plaintiff's disability. *See* Exhibit A.

73.     Although Plaintiff's Charge of Discrimination was cross-filed with both the PHRC and the EEOC, upon information and belief, the PHRC deferred Plaintiff's charge to the EEOC for investigation.

74.     On or about July 19, 2018, Plaintiff received a Notice of Right to Sue letter from the EEOC, thereby exhausting Plaintiff's administrative remedies under PHRA. *See* Exhibit B.

75.     Defendant meets the definition of "employer" under PHRA.

76.     Plaintiff meets the definition of an "employee" under PHRA.

77.     Plaintiff made an internal report of sexual harassment, sexual discrimination, and a hostile work environment to her employer, Defendant, in or around January 2016 concerning the ongoing conduct of Non-Party, Derham.

78.     Plaintiff's aforementioned internal report concerning the sexual harassment, sexual discrimination, and a hostile work environment caused by Non-Party, Derham constitutes an "protected activity" under PHRA.

79.    Although Defendant allegedly investigated the ongoing conduct of Non-Party, Derham,

Defendant did not terminate Non-Party, Derham until in or around April 2017 – well over a year

after Plaintiff's internal report.

80.    During the intervening time, Non-Party, Derham continued to subject Plaintiff to sexual

harassment and a hostile work environment based on Plaintiff's sex (female) and Plaintiff's prior

refusals to Non-Party, Derham's sexual advances.

81.    On or about May 20, 2017, Plaintiff qualified for and took a medical leave of absence in

order to undergo a significant stomach surgery on May 20, 2017.

82.    While on the approved medical leave of absence, on or about August 17, 2017,

Defendant's Agent, Non-Party, Mike McCurdy communicated to Plaintiff that it was time for

Plaintiff to look for another job.

83.    Plaintiff completed her medical leave of absence and returned to work for Defendant on

September 18, 2017.

84.    Plaintiff suffered an adverse employment decision when Defendant terminated Plaintiff

on September 18, 2017, the very day Plaintiff returned from her medical leave of absence.

85.    Plaintiff believes and therefore avers that Defendant was significantly motivated to

terminate Plaintiff due to her aforementioned internal report of sexual harassment, sexual

discrimination, and a hostile work environment.

86.    Plaintiff believes and therefore avers that Defendant, by and through its various agents,

harbored animosity towards Plaintiff for her internal report in which Defendant's agents believed

caused the termination of Non-Party, Derham.

87.    The temporal proximity between the protected activity, ultimately resulting in Non-Party,

Derham's termination in or around April 2017 and the adverse action, which occurred on

September 18, 2017 are unduly suggestive – as the period during which Plaintiff was on an approved medical absence should be ignored when considering the temporal proximity, i.e. May 20, 2017 through September 18, 2017.

88.     Plaintiff suffered financial harm as well as emotional harm as a result of Defendant's wrongful termination of Plaintiff in retaliation for her aforementioned internal report.

89.     Based on the forgoing, Defendant retaliated against Plaintiff in violation of PHRA.

**COUNT III**
***Violations of Philadelphia Fair Practices Ordinance ("PFPO") - Retaliation***

90.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

91.     On or about July 6, 2018, Plaintiff timely cross-filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.

92.     In Plaintiff's Charge of Discrimination, Plaintiff complained of sexual harassment, a hostile work environment, discrimination based on Plaintiff's sex (female), retaliation, wrongful discharge, and discrimination based on Plaintiff's disability. *See* Exhibit A.

93.     Although Plaintiff's Charge of Discrimination was cross-filed with both the PHRC and the EEOC, upon information and belief, the PHRC deferred Plaintiff's charge to the EEOC for investigation.

94.     On or about July 19, 2018, Plaintiff received a Notice of Right to Sue letter from the EEOC, thereby exhausting Plaintiff's administrative remedies under PFPO. *See* Exhibit B.

95.     Defendant meets the definition of "employer" under PFPO.

96.     Plaintiff meets the definition of an "employee" under PFPO.

97.    Plaintiff made an internal report of sexual harassment, sexual discrimination, and a

hostile work environment to her employer, Defendant, in or around January 2016 concerning the

ongoing conduct of Non-Party, Derham.

98.    Plaintiff's aforementioned internal report concerning the sexual harassment, sexual

discrimination, and a hostile work environment caused by Non-Party, Derham constitutes an

"protected activity" under PFPO.

99.    Although Defendant allegedly investigated the ongoing conduct of Non-Party, Derham,

Defendant did not terminate Non-Party, Derham until in or around April 2017 – well over a year

after Plaintiff's internal report.

100.    During the intervening time, Non-Party, Derham continued to subject Plaintiff to sexual

harassment and a hostile work environment based on Plaintiff's sex (female) and Plaintiff's prior

refusals to Non-Party, Derham's sexual advances.

101.    On or about May 20, 2017, Plaintiff qualified for and took a medical leave of absence in

order to undergo a significant stomach surgery on May 20, 2017.

102.    While on the approved medical leave of absence, on or about August 17, 2017,

Defendant's Agent, Non-Party, Mike McCurdy communicated to Plaintiff that it was time for

Plaintiff to look for another job.

103.    Plaintiff completed her medical leave of absence and returned to work for Defendant on

September 18, 2017.

104.    Plaintiff suffered an adverse employment decision when Defendant terminated Plaintiff

on September 18, 2017, the very day Plaintiff returned from her medical leave of absence.

105.    Plaintiff believes and therefore avers that Defendant was significantly motivated to terminate Plaintiff due to her aforementioned internal report of sexual harassment, sexual discrimination, and a hostile work environment.

106.    Plaintiff believes and therefore avers that Defendant, by and through its various agents, harbored animosity towards Plaintiff for her internal report in which Defendant's agents believed caused the termination of Non-Party, Derham.

107.    The temporal proximity between the protected activity, ultimately resulting in Non-Party, Derham's termination in or around April 2017 and the adverse action, which occurred on September 18, 2017 are unduly suggestive – as the period during which Plaintiff was on an approved medical absence should be ignored when considering the temporal proximity, i.e. May 20, 2017 through September 18, 2017.

108.    Plaintiff suffered financial harm as well as emotional harm as a result of Defendant's wrongful termination of Plaintiff in retaliation for her aforementioned internal report.

109.    Based on the forgoing, Defendant retaliated against Plaintiff in violation of PFPO.

## COUNT IV
### *Violations of the Family Medical Leave Act ("FMLA") - Retaliation*

110.    Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

111.    On or about May 20, 2017, Plaintiff qualified for and took an emergency medical leave of absence from her employer, upon information and belief, pursuant to the Family Medical Leave Act ("FMLA")– thereby invoking her right to FMLA-qualifying leave.

112.    Plaintiff underwent three significant stomach surgeries during Summer 2017.

113.    While on the approved medical leave of absence, on or about August 17, 2017, Defendant's Agent, Non-Party, Mike McCurdy communicated to Plaintiff that it was time for Plaintiff to look for another job.

114.     Plaintiff completed her medical leave of absence and returned to work for Defendant on September 18, 2017.

115.     Plaintiff suffered an adverse employment decision when Defendant terminated Plaintiff on September 18, 2017, the very day Plaintiff returned from her medical leave of absence.

116.     The temporal proximity between the protected activity and the adverse action are unduly suggestive as Plaintiff was terminated the very day Plaintiff returned from her medical leave of absence.

117.     Defendant's termination of Plaintiff was causally related to Plaintiff's invoking her right to FMLA-qualifying leave.

## COUNT V
### Violations of the Family Medical Leave Act ("FMLA") - Violations

118.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

119.     On or about May 20, 2017, Plaintiff qualified for and took an emergency medical leave of absence from her employer, upon information and belief, pursuant to the Family Medical Leave Act ("FMLA")– thereby invoking her right to FMLA-qualifying leave.

120.     Plaintiff underwent three significant stomach surgeries during Summer 2017.

121.     While on an approved medical leave of absence, Plaintiff visited her workplace solely in order to meet with her assistant on August 17, 2017 – as her doctor only approved her for a one-hour vist.

122.     However, while at her workplace on August 17, 2017, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra demanded to meet with Plaintiff – prior to Plaintiff's return from her approved medical leave of absence.

123.     At all material times on August 17, 2017, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra knew that Plaintiff was on an approved medical leave of absence

and was not returning from her approved medical leave of absence until in or around September 18, 2017.

124.    At all material times on August 17, 2017, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra knew that Plaintiff was only allowed to return to work, per for doctor's instruction, for one hour.

125.    Nonetheless, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra interrogated Plaintiff and falsely accused Plaintiff of violating various company policies.

126.    The interrogation lasted approximately two hours.

127.    During the interrogation, Defendant's Agent, Non-Party, Mike McCurdy communicated to Plaintiff that it was time for Plaintiff to look for another job.

128.    Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra interfered with Plaintiff's approved medical leave of absence in violation of the Family Medical Leave Act.

129.    Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra's interference interfered with Plaintiff's approved medical leave of absence had a chilling affect on Plaintiff due, in part, to the hostility shown during the aforementioned interrogation.

130.    Any reasonable person in Plaintiff's position would also be "chilled" from taking future medical leave under FMLA by Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra's actions.

## COUNT VI
### *Violations of Title VII – Hostile Work Environment*

131.    Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

132.    On or about July 6, 2018, Plaintiff timely cross-filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.

133.    In Plaintiff's Charge of Discrimination, Plaintiff complained of sexual harassment, a hostile work environment, discrimination based on Plaintiff's sex (female), retaliation, wrongful discharge, and discrimination based on Plaintiff's disability. *See* Exhibit A.

134.    Although Plaintiff's Charge of Discrimination was cross-filed with both the PHRC and the EEOC, upon information and belief, the PHRC deferred Plaintiff's charge to the EEOC for investigation.

135.    On or about July 19, 2018, Plaintiff received a Notice of Right to Sue letter from the EEOC, thereby exhausting Plaintiff's administrative remedies under Title VII. *See* Exhibit B.

136.    Defendant meets the definition of "employer" under Title VII.

137.    Plaintiff meets the definition of an "employee" under Title VII.

138.    Defendant's Agents, Non-Parties, Derham and Mellor subjected Plaintiff to a hostile work environment beginning in April 2014 and continuing through until Plaintiff's termination on or about September 18, 2017.

139.    Defendant's Agent, Non-Party, Derham subjected Plaintiff to unwanted, inappropriate, and appalling sexual harassment.

140.    As a result of Plaintiff rejecting Defendant's Agent, Non-Party, Derham sexual advances, Defendant's Agents, Non-Parties, Derham and Mellor spread lies concerning Plaintiff; encouraged Plaintiff's support staff to falsely accuse Plaintiff of inappropriate conduct; and knowingly disciplined Plaintiff for false violations of company policies.

141.    Defendant's Agent, Non-Party, Derham's aforementioned conduct was pervasive and regular from April 2014 until his termination.

142.     Defendant's Agent, Non-Party, Mellor's aforementioned conduct was pervasive and regular from April 2014 and continued even after Defendant's Agent, Non-Party, Derham's termination.

143.     In fact, Defendant's Agents, Non-Parties, Derham and Mellor's false allegations were purportedly still being investigated in August 2017, causing Plaintiff to suffer official allegations of wrongful conduct until she was wrongfully terminated on September 18, 2017.

144.     Defendant's Agents, Non-Parties, Derham and Mellor's aforementioned conduct detrimentally affected Plaintiff and would detrimentally affect any reasonable person in Plaintiff's position.

145.     Plaintiff made an internal report of sexual harassment, sexual discrimination, and a hostile work environment to her employer, Defendant, in or around January 2016 concerning the ongoing conduct of Non-Party, Derham.

146.     Although Defendant allegedly investigated the ongoing conduct of Non-Party, Derham, Defendant did not terminate Non-Party, Derham until in or around April 2017 – well over a year after Plaintiff's internal report.

147.     During the intervening time, Non-Party, Derham continued to subject Plaintiff to sexual harassment and a hostile work environment based on Plaintiff's sex (female) and Plaintiff's prior refusals to Non-Party, Derham's sexual advances.

148.     Defendant is responsible for its Agent, Non-Party's Derham's conduct as Defendant, through its managerial agents, had knowledge of Derham's propensity to sexually harass female employees, as well as Defendant's failure to take action to stop the sexual harassment and hostile work environment following Plaintiff's internal complaint.

149.     Plaintiff suffered significant harm as a result of Defendant subjecting Plaintiff to a hostile work environment in violation of Title VII.

**COUNT VII**

*Violations of Pennsylvania Human Relations Act ("PHRA") - Hostile Work Environment*

150.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

151.     On or about July 6, 2018, Plaintiff timely cross-filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.

152.     In Plaintiff's Charge of Discrimination, Plaintiff complained of sexual harassment, a hostile work environment, discrimination based on Plaintiff's sex (female), retaliation, wrongful discharge, and discrimination based on Plaintiff's disability. *See* Exhibit A.

153.     Although Plaintiff's Charge of Discrimination was cross-filed with both the PHRC and the EEOC, upon information and belief, the PHRC deferred Plaintiff's charge to the EEOC for investigation.

154.     On or about July 19, 2018, Plaintiff received a Notice of Right to Sue letter from the EEOC, thereby exhausting Plaintiff's administrative remedies under PHRA. *See* Exhibit B.

155.     Defendant meets the definition of "employer" under PHRA.

156.     Plaintiff meets the definition of an "employee" under PHRA.

157.     Defendant's Agents, Non-Parties, Derham and Mellor subjected Plaintiff to a hostile work environment beginning in April 2014 and continuing through until Plaintiff's termination on or about September 18, 2017.

158.     Defendant's Agent, Non-Party, Derham subjected Plaintiff to unwanted, inappropriate, and appalling sexual harassment.

159.    As a result of Plaintiff rejecting Defendant's Agent, Non-Party, Derham sexual advances, Defendant's Agents, Non-Parties, Derham and Mellor spread lies concerning Plaintiff; encouraged Plaintiff's support staff to falsely accuse Plaintiff of inappropriate conduct; and knowingly disciplined Plaintiff for false violations of company policies.

160.    Defendant's Agent, Non-Party, Derham's aforementioned conduct was pervasive and regular from April 2014 until his termination.

161.    Defendant's Agent, Non-Party, Mellor's aforementioned conduct was pervasive and regular from April 2014 and continued even after Defendant's Agent, Non-Party, Derham's termination.

162.    In fact, Defendant's Agents, Non-Parties, Derham and Mellor's false allegations were purportedly still being investigated in August 2017, causing Plaintiff to suffer official allegations of wrongful conduct until she was wrongfully terminated on September 18, 2017.

163.    Defendant's Agents, Non-Parties, Derham and Mellor's aforementioned conduct detrimentally affected Plaintiff and would detrimentally affect any reasonable person in Plaintiff's position.

164.    Plaintiff made an internal report of sexual harassment, sexual discrimination, and a hostile work environment to her employer, Defendant, in or around January 2016 concerning the ongoing conduct of Non-Party, Derham.

165.    Although Defendant allegedly investigated the ongoing conduct of Non-Party, Derham, Defendant did not terminate Non-Party, Derham until in or around April 2017 – well over a year after Plaintiff's internal report.

166.     During the intervening time, Non-Party, Derham continued to subject Plaintiff to sexual harassment and a hostile work environment based on Plaintiff's sex (female) and Plaintiff's prior refusals to Non-Party, Derham's sexual advances.

167.     Defendant is responsible for its Agent, Non-Party's Derham's conduct as Defendant, through its managerial agents, had knowledge of Derham's propensity to sexually harass female employees, as well as Defendant's failure to take action to stop the sexual harassment and hostile work environment following Plaintiff's internal complaint.

168.     Plaintiff suffered significant harm as a result of Defendant subjecting Plaintiff to a hostile work environment in violation of PHRA.

## COUNT VIII
### *Violations of Philadelphia Fair Practices Ordinance ("PFPO") - Hostile Work Environment*

169.     Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

170.     On or about July 6, 2018, Plaintiff timely cross-filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit A.

171.     In Plaintiff's Charge of Discrimination, Plaintiff complained of sexual harassment, a hostile work environment, discrimination based on Plaintiff's sex (female), retaliation, wrongful discharge, and discrimination based on Plaintiff's disability. *See* Exhibit A.

172.     Although Plaintiff's Charge of Discrimination was cross-filed with both the PHRC and the EEOC, upon information and belief, the PHRC deferred Plaintiff's charge to the EEOC for investigation.

173.     On or about July 19, 2018, Plaintiff received a Notice of Right to Sue letter from the EEOC, thereby exhausting Plaintiff's administrative remedies under PFPO. *See* Exhibit B.

174.     Defendant meets the definition of "employer" under PFPO.

175.    Plaintiff meets the definition of an "employee" under PFPO.

176.    Defendant's Agents, Non-Parties, Derham and Mellor subjected Plaintiff to a hostile work environment beginning in April 2014 and continuing through until Plaintiff's termination on or about September 18, 2017.

177.    Defendant's Agent, Non-Party, Derham subjected Plaintiff to unwanted, inappropriate, and appalling sexual harassment.

178.    As a result of Plaintiff rejecting Defendant's Agent, Non-Party, Derham sexual advances, Defendant's Agents, Non-Parties, Derham and Mellor spread lies concerning Plaintiff; encouraged Plaintiff's support staff to falsely accuse Plaintiff of inappropriate conduct; and knowingly disciplined Plaintiff for false violations of company policies.

179.    Defendant's Agent, Non-Party, Derham's aforementioned conduct was pervasive and regular from April 2014 until his termination.

180.    Defendant's Agent, Non-Party, Mellor's aforementioned conduct was pervasive and regular from April 2014 and continued even after Defendant's Agent, Non-Party, Derham's termination.

181.    In fact, Defendant's Agents, Non-Parties, Derham and Mellor's false allegations were purportedly still being investigated in August 2017, causing Plaintiff to suffer official allegations of wrongful conduct until she was wrongfully terminated on September 18, 2017.

182.    Defendant's Agents, Non-Parties, Derham and Mellor's aforementioned conduct detrimentally affected Plaintiff and would detrimentally affect any reasonable person in Plaintiff's position.

183.    Plaintiff made an internal report of sexual harassment, sexual discrimination, and a hostile work environment to her employer, Defendant, in or around January 2016 concerning the ongoing conduct of Non-Party, Derham.

184.    Although Defendant allegedly investigated the ongoing conduct of Non-Party, Derham, Defendant did not terminate Non-Party, Derham until in or around April 2017 – well over a year after Plaintiff's internal report.

185.    During the intervening time, Non-Party, Derham continued to subject Plaintiff to sexual harassment and a hostile work environment based on Plaintiff's sex (female) and Plaintiff's prior refusals to Non-Party, Derham's sexual advances.

186.    Defendant is responsible for its Agent, Non-Party's Derham's conduct as Defendant, through its managerial agents, had knowledge of Derham's propensity to sexually harass female employees, as well as Defendant's failure to take action to stop the sexual harassment and hostile work environment following Plaintiff's internal complaint.

187.    Plaintiff suffered significant harm as a result of Defendant subjecting Plaintiff to a hostile work environment in violation of PFPO.

## COUNT IX
### Breach of Contract

188.    Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

189.    Plaintiff and Defendant entered into an employment contract in or around April 2014. Plaintiff does not possess a copy of the employment contract. Upon information and belief, Defendant possesses a true and accurate copy of the employment contract.

190.    Pursuant to the employment contract, Defendant was contractually required to pay Plaintiff her commission or "brokerage splits" from all pending contracts that Plaintiff was responsible for prior to her termination.

191.    Although Plaintiff has received some commissions on pending contracts, Plaintiff believes and therefore avers that Defendant has breached the employment contract by failing to pay Plaintiff all commissions owed to Plaintiff pursuant to the employment contract.

192.    As a result of Defendant's breach of the employment contract, Plaintiff has been financially harmed.

193.    To determine the full extent of Plaintiff's financial damages, an accounting of the commissions earned by Plaintiff on the pending contracts is required.

V.    **PRAYER FOR RELIEF**

194.    Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment in her favor and against Defendant in an amount in excess of $75,000, plus such other and further relief as this Honorable Court deems necessary and just, including the following:

a.    Statutory damages;

b.    Compensatory damages, including actual damages for financial and emotional distress;

c.    Punitive damages;

d.    An accounting of the commissions earned by Plaintiff on the pending contracts at the time of Plaintiff's wrongful termination;

e.    Attorneys' fees and expenses;

f.    Pre-judgment interest; and,

g.    Equitable relief.

Respectfully submitted,

**WEISBERG LAW**                        **SCHAFKOPF LAW, LLC**

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
L. Anthony DiJiacomo, III, Esquire

/s/ Gary Schafkopf,
Gary Schafkopf, Esquire
*Attorneys for Plaintiff*

**WEISBERG LAW**
Matthew B. Weisberg, Esq.
Attorney ID No.: 85570
L. Anthony DiJiacomo, III, Esq.
Attorney ID No.: 321356
7 South Morton Ave.
Morton, PA 19070
(610) 690-0801
(610) 690-0880 – Fax

**SCHAFKOPF LAW, LLC**
Gary Schafkopf, Esq.
Attorney ID No. 83362
11 Bala Ave
Bala Cynwyd, PA 19004
610-664-5200 Ext 104
Fax: 888-238-1334

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREA PESACOV**<br>313 Arch St., Unit 209<br>Philadelphia, PA 19130 | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No.: 18-cv-4282 |
| | : | |
| **CUSHMAN & WAKEFIELD OF**<br>**PENNSYLVANIA, INC.**<br>One Liberty Place<br>1650 Market Street, 33rd Floor<br>Philadelphia, PA 19103 | : | JURY TRIAL OF TWELVE (12)<br>JURORS DEMANDED |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |

### CERTIFICATE OF SERVICE

I, Matthew B. Weisberg, Esquire, hereby certify that on this 24th day of October, 2018, a true and correct copy of the foregoing Third Amended Complaint was served via e-filing upon the counsel for all parties.

WEISBERG LAW

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esq.
L. Anthony DiJiacomo, III, Esq.
*Attorneys for Plaintiffs*