# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREA PESACOV** | : | |
| | : | |
| v. | : | No.: 18-cv-4282 |
| | : | |
| **CUSHMAN & WAKEFIELD OF** | : | |
| **PENNSYLVANIA, INC.** | : | |

## ORDER

**AND NOW**, this _____ day of _____, 201\_\_, upon consideration of Defendant, Cushman & Wakefield of Pennsylvania, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint, and Plaintiff, Andrea Pesacov's Response in Opposition thereto, it is hereby **ORDERED** and **DECREED**:

(1) Counts II, IV, V, VI, VII, VII are voluntarily **WITHDRAWN** without prejudice;

(2) Defendants' Motion to Dismiss Counts I, III, & IX is **DENIED**; and,

(3) Defendant, Cushman & Wakefield of Pennsylvania, Inc. shall file an Answer to Plaintiff's Third Amended Complaint within 20 days of this Order.

**AND IT IS SO ORDERED.**

_____
Hon. Anita B. Brody, U.S.D.J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREA PESACOV** | : | |
| | : | |
| v. | : | No.: 18-cv-4282 |
| | : | |
| **CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC.** | : | |
| | : | |

**PLAINTIFF, ANDREA PESACOV'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Andrea Pesacov, by and through her undersigned attorneys, hereby incorporates by reference her attached Memorandum of Law as if set forth at length herein. For the reasons set forth in the attached Memorandum of Law, Plaintiff respectfully requests this Honorable Court deny Defendant, Cushman & Wakefield of Pennsylvania, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint and enter the attached Order.

**WHEREFORE,** Plaintiff, Andrea Pesacov, by and through her undersigned attorneys, respectfully requests this Honorable Court deny Defendant, Cushman & Wakefield of Pennsylvania, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint and enter the proposed Order attached hereto.

Respectfully submitted,

| **WEISBERG LAW** | **SCHAFKOPF LAW, LLC** |
|---|---|
| */s/ Matthew B. Weisberg* | */s/ Gary Schafkopf* |
| Matthew B. Weisberg | Gary Schafkopf |
| Attorney ID No. 85570 | Attorney ID No. 83362 |
| L. Anthony DiJiacomo, III | 11 Bala Ave |
| Attorney ID No. 321356 | Bala Cynwyd, PA 19004 |
| 7 South Morton Ave. 19070 | 610-664-5200 Ext 104 |
| Morton, PA | Fax: 888-238-1334 |
| 610-690-0801 | *Attorney for Plaintiff* |
| Fax: 610-690-0880 | |
| *Attorneys for Plaintiff* | |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREA PESACOV** | : |
| | : |
| v. | :    No.: 18-cv-4282 |
| | : |
| **CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC.** | : |
| | : |

**PLAINTIFF, ANDREA PESACOV'S MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Andrea Pesacov, by and through her undersigned attorneys, hereby provides her Memorandum of Law in Support of her Response in Opposition to Defendant, Cushman & Wakefield of Pennsylvania, Inc.'s ("Moving Defendant") Motion to Dismiss Plaintiff's Third Amended Complaint ("Pl. Op. Compl.").

**I.     OPERATIVE FACTS**

Plaintiff, Andrea Pesacov, is an adult individual, residing at the above captioned address. At all times material hereto, Plaintiff, Andrea Pesacov, was employed by Defendant as the Senior Director of Cushman & Wakefield's Retail Services for the Philadelphia / N.E. Region. *See* Pl. Op. Compl., ¶ 4. Plaintiff, Pesacov worked for Defendant for about 3.5 years, from approximately April 2014 until approximately September 2017. *Id.*

Defendant, Cushman & Wakefield of Pennsylvania, Inc. ("C&W") is a commercial real estate services company and is a corporate child of Non-Party, Cushman & Wakefield, Inc., which is one of the largest commercial real estate services firms in the world, operating in over seventy countries and employing approximately 45,000 employees. *Id.* at ¶ 5.

In or around April 2014, Defendant's Agent, Non-Party, John Derham, who was employed by Defendant as the Senior Managing Director, met with Plaintiff concerning prospective employment. *Id.* at ¶ 8. During this initial job interview, Derham made inappropriate, sexual advances on Plaintiff. *Id.* at ¶ 9. In fact, Derham inappropriately placed on hand on Plaintiff's thigh three (3) times. *Id.* On the third occasion, Plaintiff gave Derham a nasty look, in which Derham responded, stating that he was a "very tactile individual". *Id.* at ¶ 10. Plaintiff replied, "not with me you're not." *Id.*

Despite this sexually charged interview, Defendant ultimately hired Plaintiff in or around April 2014. *Id.* at ¶ 11. Plaintiff entered into an employment contract with Defendant in or around April 2014. Pursuant to the employment contract, if Plaintiff separated from Defendant, Defendant was contractually required to pay Plaintiff her earned commission or "brokerage splits" from all contracts that Plaintiff was responsible for prior to any separation. *Id.* at ¶ 13.

Plaintiff reported Derham's inappropriate sexual harassment of Plaintiff during the aforementioned job interview to Defendant's Agent, Non-Party, Matt Winn, who was employed by Defendant as the Chief Operations Officer of the Americas. *Id.* at ¶ 14. Winn informed Plaintiff that Derham had a reputation of sexually harassing his female colleagues and subordinates and that Winn expected Plaintiff to have a difficult working relationship with Derham. *Id.* at ¶ 15. Winn did not take any further actions concerning Derham's inappropriate sexual harassment of Plaintiff. *Id.* at ¶ 16.

During the first six months of Plaintiff's employment, Derham regularly lied and mislead Plaintiff concerning her workplace duties. *Id.* at ¶ 18. For example, Derham mislead Plaintiff concerning potential contracts with Shops at Liberty Place, causing Plaintiff to lose significant commissions. *Id.*

Derham also spread lies concerning Plaintiff to Plaintiff's fellow co-workers and subordinates. *Id.* at ¶ 19. Derham's close, personal friend, Defendant's Agent, Non-Party, Shannon Mellor, who was employed by Defendant in the position of Operations Manager of the Philadelphia Office also began spreading lies concerning Plaintiff at Derham's direction. *Id.* Derham and Mellor also encouraged Plaintiff's support staff to falsely claim that they could not get along with Plaintiff in an attempt to create pre-text for Plaintiff's termination and/or demotion. *Id.* at ¶ 20.

In December 2015, as Plaintiff was leaving Defendant's 2015 holiday party, Derham, approached her, and sexually propositioned her by saying, "What would you do right now if I got down on my hands and knees and ate you out?" *Id.* at ¶ 21. Plaintiff reported Derham's sexual harassment at the holiday party, as well as the ongoing sex-based discrimination and hostile work environment to Defendant's Agent, Non-Party, Gene Spiegelman who is employed by Defendant in the position of Vice Chairman-Head of Retail Services. *Id.* at ¶ 22. As a result of Plaintiff's aforementioned internal complaint, Defendant initiated an investigation into Derham concerning the aforementioned acts of sexual harassment, as well as the ongoing sex-based discrimination and hostile work environment caused by Derham. *Id.* at ¶ 23.

Nonetheless, Derham continued to be employed by Defendant into in or around April 2017. *Id.* at ¶ 24. Even after Plaintiff's aforementioned internal complaint, Derham continued to discriminate against Plaintiff and subject Plaintiff to a hostile work environment. *Id.* at ¶ 25. For example, after convincing a support staff member to falsely accuse Plaintiff of being mean to her, Derham called Plaintiff into his office and screamed at Plaintiff so loudly that the entire office could hear. *Id.* at ¶ 26. Upon information and belief, Derham did so in order to discredit Plaintiff and protect himself. *Id.* Derham and Mellor continued to spread lies concerning

Plaintiff and created false pretenses to discipline Plaintiff. *Id.* at ¶ 27.

In or around March 2017, Defendant terminated Derham. *Id.* at ¶ 28. However, as the results of the internal investigation were never shared with Plaintiff, Plaintiff is unaware of the rationale or cause for Derham's termination. *Id.* Nonetheless, Plaintiff believes that Defendant's Agents harbored animosity towards Plaintiff as a result of Plaintiff's aforementioned internal complaint against Derham, which is believed to have played a part in Derham's termination. *Id.* at ¶ 29.

In or around May 20, 2017, Plaintiff suffered a medical emergency due to food-poisoning while at a work-related function, resulting in multiple surgeries. *Id.* at ¶ 31. Plaintiff's medical doctors did not allow Plaintiff to return to work until on or about September 18, 2017. *Id.* at ¶ 32. While in the intensive care unit, on or about May 20, 2018, Plaintiff contacted Defendant's Agent, Non-Party, Mike McCurdy (Regional Managing Principal at the Philadelphia office) towards an approved medical leave, which was informally granted. *Id.* at ¶¶ 30, 33.

Plaintiff underwent three significant stomach surgeries during Summer 2017. *Id.* at ¶ 34. While on an approved medical leave of absence, Plaintiff visited her workplace solely in order to meet with her assistant on August 17, 2017 – as her doctor only approved her for a one-hour visit. *Id.* at ¶ 35. However, while at her workplace on August 17, 2017, Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra demanded to meet with Plaintiff – prior to Plaintiff's return from her approved medical leave of absence. *Id.* at ¶ 36.

Defendant's Agents, Non-Parties, Mike McCurdy and Stevannie Sierra interrogated Plaintiff and falsely accused Plaintiff of violating various company policies based on reports from Derham – reports made prior to Derham's termination. *Id.* at ¶ 39. The interrogation lasted approximately two hours. *Id.* at ¶ 40. During the aforementioned interrogation, Sierra admitted

that she had never previously asked Plaintiff her side of any of the alleged (and false) allegations, but instead has simply believed Derham. *Id.* at ¶ 43. In fact, Sierra admitted – as she was a recent hire – that she was not aware of the harrowing 2.5-year history of Derham's subjection of Plaintiff to sexual harassment, sex-based discrimination, and hostile work environment. *Id.* at ¶ 44. Nonetheless, at the end of the meeting, Defendant's Agent, Non-Party, McCurdy told Plaintiff that it was time for her to look for another job. *Id.* at ¶ 45.

On September 18, 2017, which was Plaintiff's first day back at work following her medical leave of absence, Plaintiff was called into the office by McCurdy and terminated. *Id.* at ¶ 46. Plaintiff was not given any reason for her termination. *Id.* Plaintiff believes and therefore avers that Plaintiff was wrongfully terminated in retaliation for Plaintiff's aforementioned internal complaint. *Id.* at ¶ 47.

Since Plaintiff's termination, Plaintiff has received some commissions on pending contracts. *Id.* at ¶ 48. However, Plaintiff believes and therefore avers that Defendant has breached the employment contract by failing to pay Plaintiff all commissions owed to Plaintiff pursuant to the employment contract. *Id.* at ¶ 49. To determine the full extent of Plaintiff's financial damages, an accounting of the commissions earned by Plaintiff on the pending contracts is required. *Id.*

On or about July 6, 2018, Plaintiff timely cross-filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 51; *see also* Pl. Op. Compl.*,* Exhibit A. In Plaintiff's Charge of Discrimination, Plaintiff complained of sexual harassment, a hostile work environment, discrimination based on Plaintiff's sex (female), retaliation, wrongful discharge, and discrimination based on Plaintiff's disability. *Id.* at ¶ 52; *see also* Pl. Op. Compl.*,* Exhibit A.

On or about July 19, 2018, Plaintiff received a Notice of Right to Sue letter from the EEOC, thereby exhausting Plaintiff's administrative remedies under Title VII. *Id.* at ¶ 54; *see also* Pl. Op. Compl.*,* Exhibit B.

Plaintiff believes and therefore avers that Defendant was motivated to terminate Plaintiff due to her aforementioned internal report of sexual harassment, sexual discrimination, and a hostile work environment. *Id.* at ¶ 65. Plaintiff believes and therefore avers that Defendant, by and through its various agents, harbored animosity towards Plaintiff for her internal report in which Defendant's agents believed caused the termination of Non-Party, Derham. *Id.* at ¶ 66. The temporal proximity between the protected activity, ultimately resulting in Non-Party, Derham's termination in or around April 2017 and the adverse action, which occurred on September 18, 2017 are unduly suggestive – as the period during which Plaintiff was on an approved medical absence should be ignored when considering the temporal proximity, i.e. May 20, 2017 through September 18, 2017. *Id.* at ¶ 67.

## II.     STANDARD

### A.     MOTION TO DISMISS: *FOWLER* RE *TWOMBLY* AND *IQBAL*[1]

**Reversing** the District Court's 12(b)(6) dismissal upon claims of insufficient specificity, the Third Circuit held the United State Supreme Court in *Twombly* and *Iqbal* (in accord with *Phillips*) merely requires that the Complaint "set out 'sufficient factual matter' to show that the claim is sufficiently plausible… [allowing] the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPML Shadyside* - - F. 3d - -, 2009 WL 2501662 (C.A.3 (Pa) 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1955 (2009)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 230 (C.A.3 2008).

---

[1] *See generally*, "Simplified Pleading, Meaningful Days in Court, and Trials On The Merits: Reflections On The Deformation of Federal Procedure," *New York University Law Review*, Vol. 88, p. 286 (April 2013).

*Fowler* reiterated the appropriate Motion to Dismiss standard, as elucidated in *Phillips*, remaining: "courts [must] accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, *under **any** reasonable reading of the Complaint*, the plaintiff *may* be entitled to relief." *Fowler*, supra (quoting *Phillips*, at 233) (emphasis added). "Although Fowler's Complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims."[2] *Fowler* (citing *Twombly*, at 564, n.8).

"Even post-*Twombly*, it has been noted that a plaintiff is **not required** to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation ***that discovery will reveal evidence of the necessary element***.'" *Fowler*, supra; (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 231 2671 (W.D. Pa. 2008) *Phillips*, at 234. Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Montville Twp. v. Woodmont Builders LLC*, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting *Twombly*, at 1969). In fact, a Plaintiff need not plead any causes of action (merely facts with request for relief). *See* 2 James Wm. Moore et al., *Moore's Federal Practice* P 8.04[3].

---

[2] Mr. Sharp:   It's a conclusory fact.

Justice Breyer:   Well, it's a fact. They sat in their view --

Mr. Sharp:   It's a conclusion.

Justice Breyer:   All right. I don't know what a conclusory fact is as opposed to a regular fact.

*Dart Cherokee Basin Operating Co. v. Owens*, 13-719 (S.Ct. October 7, 2014) (excerpt from transcript of oral argument).

"Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." *Fowler*, supra "…[S]tandards of pleadings are not the same as standards of proof." *Id*. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Id*. (quoting *Twombly*, at 556).

B.    AMENDED PLEADING

A Plaintiff should be provided an opportunity to file an amended complaint if it appears that the deficiencies can be corrected. *Twombly*, supra.; *See,* 2A J. Moore, *Moore's Federal Practice* ¶12.07 [2.-5], P.12-99 (2d ed. 1994); *accord*, *In re Spree.com Corp.*, 2001 WL 1518242 (Bankr. E.D. Pa. 2001). Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).

The Court should freely give leave to amend a Complaint "when justice so requires." FRCP 15(a)(2); *Fowler*, supra. ("we note that the District Court *inexplicably* foreclosed Fowler from an opportunity to amend her Complaint so as to provide further specifics…" Though the deadline for amended pleadings had not yet expired, the District Court dismissed Fowler's Complaint with prejudice **in error**) (emphasis added). The Court should grant Plaintiffs leave to amend their Complaint unless futile or prejudicial, ***even if not requested***. *Adams v Gould, Inc.*, 739 F.2d 858, 868-870 (C.A.3 1984) (reversing district court denial of motion to amend a complaint to assert a new legal theory); *Arthur V. Maersk, Inc.*, 434 F.3d 196, 204-2017 (C.A.3 2006) (reversing district court denial of motion to amend to add a new party approximately one year after initiation); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (C.A.3 1993) (finding no prejudice

three years after action and two years after complaint was amended for second time); *Estate of Frank P. Lagano v. Bergen County Prosecutor's Office*, No. 13-3232 (C.A.3. 2014) (*citing Alston v. Parker*, 363 F.3d 229, 235 (C.A.3 2004)) (reversing a district court for not *sua sponte* granting leave to amend).

"Prejudice" is often used as a misnomer – *prejudice* is not defined by the requirement of ongoing litigation or defense but instead results from an *inability* to defend. Lorenz, *supra.* (emphasis added). "Futility" invokes the 12(b)(6) standard upon the district court's notice of the complaint's deficiencies. *Davis v. Abington Memorial Hospital*, 765 F.3d 236, 244-245 (C.A.3 2014) (citing *Krantz v. Prudential Investments Fund Management, LLC*, 144 F.3d 140, 144 (C.A.3 2002).

### C. CONCLUSION: STANDARD

When applying the correct standard, Plaintiff's Third Amended Complaint is sufficiently specific and Defendants' Motion should be denied. In the alternative, Plaintiff should be granted leave to amend as this Honorable Court is, respectfully, directed to allow.

### III. ARGUMENT

#### A. PLAINTIFF'S CLAIMS UNDER TITLE VII AND THE PFPO FOR RETALIATION WERE TIMELY FILED WITH THE EEOC AND ARE *NOT* TIME-BARRED.

Plaintiff's claims under Title VII and the Philadelphia Fair Practices Ordinance ("PFPO") for retaliation (Counts I & III respectively) were timely filed with the United States Equal Employment Opportunity Commission ("EEOC"), and thus are *not* time-barred. *See Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165 (2013). *See also Ellingsworth v. Hartford Fire Insurance Company*, 246 F. Supp. 3d 546, 588 (2017). "To bring suit under Title VII, *a claim in a deferral state, such as Pennsylvania*, must first file a complaint with the EEOC within **300 days** of the alleged unlawful employment practice." *Mandel,* 706 F.3d at 165.

Here, Plaintiff filed her claim with the EEOC for retaliation under Title VII on July 6, 2018 – within 300 days of the adverse action, i.e. of the wrongful termination, which occurred on September 18, 2017. *See* Pl. Op. Compl.*,* ¶¶ 51-52, 64; *see also* Pl. Op. Compl.*,* Exhibit A. In fact, Defendant even admits in its Motion to Dismiss that Plaintiff filed with the EEOC within 300 days of the termination. *See* Defendant's Motion to Dismiss, Page 14 (of 28) (Doc 5-1). As *Pennsylvania is a deferral state*, Plaintiff timely filed her complaint with the EEOC. *See Mandel,* 706 F.3d at 165. *See also Ellingsworth*, 246 F. Supp. 3d at 588. As Plaintiff's claim for retaliation under Title VI (Count I) was timely filed within the 300 days, Defendant's Motion to Dismiss Count I should be denied.

       **i.**    **PLAINTIFF'S CLAIMS UNDER THE PFPO FOR RETALIATION WAS TIMELY FILED WITH THE EEOC AND IS *NOT* TIME-BARRED.**

Plaintiff's claims under the PFPO for retaliation (Count III) was timely filed with the EEOC, and thus is *not* time-barred. *See Ahern v. Eresearch Technology, Inc.*, 183 F. Supp. 3d 663, 667-68 (2016). A plaintiff sufficiently exhausts her administrative remedies under the PFPO through a timely filing with the EEOC. *See Ahern*, 183 F. Supp. 3d at 667-68.

Here, as Plaintiff timely filed her complaint with the EEOC (see Section A above), Plaintiff has appropriately exhausted her administrative remedies under the PFPO and Defendant's Motion to Dismiss Count III should be denied.

       **B.**    **PLAINTIFF SUFFICIENTLY PLED FACTS SUPPORTING A CLAIM OF RETALIATION UNDER TITLE VII AND THE PFPO.**

Plaintiff sufficiently pled facts supporting a claim of retaliation under Title VII and the PFPO.[3] In order to survive a Motion to Dismiss a claim of retaliation under Title VII, a plaintiff

---

[3] As Courts use the same test to analyze whether a claim has been sufficiently stated under the PFPO as under Title VII, for the sake of efficiency, Plaintiff only addresses herein whether a claim has been sufficiently stated under Title VII. *See Ahern*, 183 F. Supp. 3d at 670-71.

must pled "sufficient factual allegations **to raise a reasonable expectation** that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir.1994)). In fact, the *Connelly* Court makes clear that a "complaint need not establish a *prima facie* case in order to survive a motion to dismiss. A *prima facie* case is 'an evidentiary standard, not a pleading requirement.'" *Id.*

An internal communication clearly opposing discrimination is a protected activity under Title VII. *See Anderson v. Boeing Company,* CV 15-3073, 2016 WL 9446648, at *19 (E.D. Pa. Aug. 30, 2016), *aff'd*, 694 Fed.Appx. 84 (3d Cir. 2017). The opposition "need *not* be written or formal; protected opposition activity 'can take the form of informal protests of discriminatory practices, including making complaints to management.'" *Id. (citing Moore v. City of Philadelphia,* 461 F.3d 331, 343 (3d Cir. 2006), as amended (Sept. 13, 2006)).

Here, Plaintiff has sufficiently pled facts to raise a reasonable expectation that discovery will reveal evidence to sustain a claim for retaliation under Title VII. First, Plaintiff made an internal report to Defendant's Agent, Gene Spiegelman, who was employed in the position of Vice Chairman-Head of Retail Services, concerning the sexual harassment of Plaintiff by Defendant's Agent, Derham. *See* Pl. Op. Compl., ¶ 22. In fact, as a result of this internal complaint, Moving Defendant initiated an internal investigation, although Moving Defendant never provided Plaintiff any information on the outcome of the internal investigation. *Id.* at ¶ 23. As such, this complaint to management concerning the sexual harassment is a protected activity under Title VII. *See Anderson,* CV 15-3073, 2016 WL 9446648, at *19.

Second, Plaintiff has pled that as a result of her internal complaint, Defendant, by and through its various agents, harbored animosity towards Plaintiff for her internal report in which Defendant's agents believed caused the termination of Non-Party, Derham. *See* Pl. Op. Compl., ¶ 66.

Notably, Defendants allege that Plaintiff has not set forth a *prima facia* case due to the lack of **evidence** demonstrating a causal link between the protected activity and the adverse action. *See* Defendant's Motion to Dismiss, Page 17 (of 28) (Doc 5-1). However, this is not necessary at this stage. *See Connelly*, 809 F.3d at 789 ("A *prima facie* case is 'an evidentiary standard, not a pleading requirement.'"). Rather, discovery will reasonably reveal the motivation of Defendant in terminating Plaintiff. As Plaintiff has sufficiently pled facts supporting a claim of retaliation under Title VII and the PFPO, Defendant's Motion to Dismiss Counts I & III should be denied.

### C.   PLAINTIFF SUFFICIENTLY PLED FACTS SUPPORTING A CLAIM FOR BREACH OF CONTRACT.

Plaintiff sufficiently pled facts supporting a claim for breach of contract despite Defendants' hyper-parsing of Plaintiff's Operative Complaint. In order to survive a Motion to Dismiss on a claim for breach of contract under Pennsylvania law, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

Here, Plaintiff has pled that she entered into an employment contract with Defendant in or around April 2014. *See* Pl. Op. Compl., ¶ 189. Defendants attached a copy of the Employment Contract to their Motion to Dismiss. *See* Doc. 5-3. The Employment Contract specifically states

that Plaintiff is entitled to share in commissions or fees collected by Defendant following Plaintiff's termination in three specific scenarios. *See* Doc. 5-3, Page 4. Plaintiff has alleged that Defendant breached the Employment Contract by failing to pay Plaintiff all commissions that she is entitled to under the Employment Contract, resulting in financial harm to Plaintiff. *See* Pl. Op. Compl., ¶¶ 191-92. As Plaintiff has sufficiently pled facts supporting a claim breach of the Employment Contract, Defendant's Motion to Dismiss Count IX should be denied.

### D. PLAINTIFF'S REQUEST TO AMEND IF NECESSARY.

To the extent this Honorable Court finds Plaintiff's Third Amended Complaint defective, Plaintiff respectfully requests leave to amend to "provide further specifics." *See* FRCP 15(a)(2); *Fowler*, supra; *see also Adams*, 739 F.2d at 868-870 (reversing district court denial of motion to amend a complaint to assert a new legal theory).

Further, without citing any case law from the Third Circuit, Defendant suggests that Plaintiff's filings in state court prevented Plaintiff from having a right, as a matter of course, to amend her complaint. *See* Defendant's Motion to Dismiss, Page 25 (of 28) (Doc 5-1). Plaintiff's Counsel has not found any case law from the Third Circuit supporting (or negating) Defendant's position. Nonetheless, to the extent this Honorable Court deems Plaintiff's filing of Plaintiff's Third Amended Complaint (first amended complaint in federal court) to be improper without leave of Court, Plaintiff respectfully requests this Honorable Court provide such leave *nunc pro tunc*.

### IV. CONCESSIONS[4]

Plaintiff respectfully withdraws her claims for retaliation under the Pennsylvania Human Relations Act, i.e. Count II.

Plaintiff respectfully withdraws her claims for violations and retaliation asserted under

---

[4] Additionally, Plaintiff did not plead any claims under Section 1983. *See generally* Pl. Op. Compl.

the Family Medical Leave Act, i.e. Counts IV and V.

Plaintiff respectfully withdraws her claims for hostile work environment under Title VII, Pennsylvania Human Relations Act, and the Philadelphia Fair Practices Ordinance, i.e. Count VI, VII, & VIII.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff, Andrea Pesacov, respectfully requests this Honorable Court deny Defendant, Cushman & Wakefield of Pennsylvania, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint and enter the proposed Order attached hereto

**WHEREFORE,** Plaintiff, Andrea Pesacov, by and through her undersigned attorneys, respectfully requests this Honorable Court deny Defendant, Cushman & Wakefield of Pennsylvania, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint and enter the proposed Order attached hereto.

Respectfully submitted,

| **WEISBERG LAW** | **SCHAFKOPF LAW, LLC** |
|---|---|
| */s/ Matthew B. Weisberg* | */s/ Gary Schafkopf* |
| Matthew B. Weisberg | Gary Schafkopf |
| Attorney ID No. 85570 | Attorney ID No. 83362 |
| L. Anthony DiJiacomo, III | 11 Bala Ave |
| Attorney ID No. 321356 | Bala Cynwyd, PA 19004 |
| 7 South Morton Ave. 19070 | 610-664-5200 Ext 104 |
| Morton, PA | Fax: 888-238-1334 |
| 610-690-0801 | *Attorney for Plaintiff* |
| Fax: 610-690-0880 | |
| *Attorneys for Plaintiff* | |

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREA PESACOV** | : | |
| | : | |
| v. | : | No.: 18-cv-4282 |
| | : | |
| **CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC.** | : : | |

## CERTIFICATE OF SERVICE

I, Matthew B. Weisberg, Esquire, hereby certify that on this 3rd day of December, 2018, a true and correct copy of the foregoing Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint, and Plaintiff's Memorandum of Law in Support Thereof, was served via ECF upon all counsel of record.

| **WEISBERG LAW** | **SCHAFKOPF LAW, LLC** |
|---|---|
| */s/ Matthew B. Weisberg* | */s/ Gary Schafkopf* |
| Matthew B. Weisberg | Gary Schafkopf |
| Attorney ID No. 85570 | Attorney ID No. 83362 |
| L. Anthony DiJiacomo, III | 11 Bala Ave |
| Attorney ID No. 321356 | Bala Cynwyd, PA 19004 |
| 7 South Morton Ave. 19070 | 610-664-5200 Ext 104 |
| Morton, PA | Fax: 888-238-1334 |
| 610-690-0801 | *Attorney for Plaintiff* |
| Fax: 610-690-0880 | |
| *Attorneys for Plaintiff* | |